# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| United States of America, | : | |
|---|---|---|
| | : | Case No.: 1:20-cr-077 |
| Plaintiff, | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| Matthew Borges, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT MATTHEW BORGES' MOTION TO COMPEL DISCOVERY

Defendant, Matthew Borges ("Borges"), by and through undersigned counsel, hereby moves the Court, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, to compel the Government to produce material exculpatory information relating to co-defendants Cespedes and Longstreth. This Motion is more fully explained in the attached memorandum in support.

                                      Respectfully submitted,

                                      */s/ Karl H. Schneider*
                                      Karl H. Schneider (0012881), Lead Counsel
                                      Todd A. Long (0082296)
                                      MCNEES WALLACE & NURICK LLC
                                      21 East State Street, Suite 1700
                                      Columbus, Ohio 43215
                                      Telephone: (614) 719-2843
                                      Facsimile: (614) 469-4653
                                      kschneider@mcneeslaw.com
                                      tlong@mcneeslaw.com

                                      *Counsel for Defendant*

# MEMORANDUM IN SUPPORT

## Introduction

The Government refuses to provide Borges and his counsel (collectively "Borges") with exculpatory *Brady* material, specifically records of or about statements made by Juan Cespedes and Jeff Longstreth.[1]  Borges maintains that Cespedes' and Longstreth's statements will negate his involvement in, and knowledge of, the alleged conspiracy set forth in the Indictment, and are not merely impeachment or *Giglio* material.  In other words, the statements are both favorable and material as to the issue of guilt.  Borges has exhausted informal efforts to obtain those, and other, *Brady* materials since April 2021.  The Government refuses to disclose those statements because, generally, the disclosure of witness statements is governed by 18 U.S.C. § 3500 ("the Jencks Act").  While the Government provides lip-service to its disclosure obligations under *Brady* and its progeny, it has not produced the requested materials.  Moreover, the Government has not denied the existence of the requested materials, nor has it denied that such materials will tend to negate Borges' involvement in, or knowledge of, the conspiracy alleged in the Indictment.

Borges moves the Court to order the Government to promptly disclose the requested materials, subject a Tier III designation.  Alternatively, the Court should compel the Government to produce the requested materials for an *in camera* inspection by the Court.

---

[1] References to "statements" is to be construed broadly including, but not limited to, that term's definition in 18 U.S.C. § 3500(e) and records that do not meet that definition such as a government agent's report that was not adopted by the witness.

**Relevant Background**

The Indictment alleges a RICO conspiracy under 18 U.S.C. § 1962(d). (Indictment, R.22.) The essential elements of a RICO conspiracy are[2]:

1. two or more people agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity;

2. the Defendant knowingly and willfully joined in the conspiracy; and

3. when the Defendant joined in the agreement, the Defendant had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

The alleged "unlawful plan" is summarized as "Householder's Enterprise agreed to receive and accept millions of dollars in bribe payments from Company A, … in return for HOUSEHOLDER taking specific official action for the benefit of Company A," and/or "Householder's Enterprise received and accepted payments from Company A corruptly with the intent that HOUSEHOLDER would be influenced and rewarded in connection with the legislation[.]" (Indictment, R.22, PageID 1258-59.) We have colloquially referred to this alleged unlawful plan as the "Big Bribe."

One of the key issues at trial will be whether Borges knowingly and willfully joined the alleged unlawful plan. Stated differently, did Borges know about the alleged Big Bribe? Borges maintains that he did not know about the alleged Big Bribe and that Cespedes and Longstreth can corroborate his lack of knowledge.

While it is difficult to prove a negative, the Indictment makes specific allegations concerning the alleged RICO conspiracy that might indicate knowledge of the supposed Big

---

[2] Eleventh Circuit Pattern Jury Instruction 75.02. The Sixth Circuit does not have a pattern jury instruction on RICO conspiracy.

Bribe. Based on those specific allegations, Borges requested that the Government provide any evidence, including witness statements, that include, reference, indicate, or suggest (directly or indirectly, any of the following[3]:

1. Borges' lack of involvement in the formation or creation of Generation Now;

2. Borges' lack of involvement with Generation Now in 2017;

3. Borges' lack of knowledge that Generation Now operated as Householder's slush fund in 2017, including Borges' lack of knowledge that Generation Now had a role in providing support, financial or otherwise, for Householder or Householder-backed candidates;

4. Borges' lack of knowledge that FirstEnergy[4] provided money to Generation Now in 2017;

5. Borges' lack of involvement with Generation Now in 2018;

6. Borges' lack of knowledge that Generation Now operated as Householder's slush fund in 2018, including Borges' lack of knowledge that Generation Now had a role in providing support, financial or otherwise, for Householder or Householder-backed candidates;

7. Borges' lack of knowledge that FirstEnergy provided money to Generation Now in 2018;

8. Borges' lack of involvement with Generation Now between January and July of 2019;

9. Borges' lack of knowledge that Generation Now operated as Householder's slush fund at any point in 2019, including Borges' lack of knowledge that Generation Now had a role in providing support, financial or otherwise, for Householder or Householder-backed candidates;

10. Borges' lack of knowledge that Generation Now operated as Householder's slush fund at any point in 2020, including Borges' lack of knowledge that Generation Now had a role in providing support, financial or otherwise, for Householder or Householder-backed candidates;

11. Borges and Householder had a negative relationship in 2016, 2017, and 2018;

---

[3] This is a partial list of subjects from Borges' April 16, 2021 letter to the Government and has been edited to comply with the Protective Order. Am. Protective Order, R.77, at PageID 1555-56. However, Acting U.S. Attorney Patel publicly disclosed the names "FirstEnergy" and "Partners for Progress" in a press conference, so those names have not been redacted. *See* https://apnews.com/article/business-government-and-politics-ohio-a4dd75020561d8b533fdabcb98a0a350

[4] References to "FirstEnergy" include FirstEnergy Corp, FirstEnergy Solutions, FirstEnergy Service Co. and any other subsidiary or affiliate.

12. Borges' lack of involvement in or support of Householder's campaign to become Speaker in 2018;

13. Borges' lack of involvement with Partners for Progress;

14. Borges' lack of knowledge of the source(s) of Partners for Progress's funding;

15. Borges' lack of knowledge that Partners for Progress coordinated outside or independent expenditures with Householder;

16. Borges' lack of involvement with [Dark Money Group 1];

17. Borges' lack of knowledge of the source(s) of [Dark Money Group 1's] funding;

18. Borges' lack of knowledge that [Dark Money Group 1] coordinated outside or independent expenditures with Householder;

19. Borges' lack of involvement with [PAC];

20. Borges' lack of knowledge of the source(s) of [PAC's] funding;

21. Borges' lack of knowledge that [PAC] coordinated outside or independent expenditures with Householder;

22. Borges' lack of involvement with [Coalition];

23. Borges' lack of knowledge of the source(s) of [Coalition's] funding;

24. Borges' lack of knowledge that [Coalition] coordinated outside or independent expenditures with Householder;

25. Borges' lack of knowledge concerning a quid pro quo between Householder and FirstEnergy;

26. Borges' lack of knowledge concerning a gratuity or reward from FirstEnergy to Householder;

27. Borges was not considered an insider of FirstEnergy at any time;

28. Borges worked on behalf of [a different electric distribution utility] in 2018 or 2019;

29. [The other electric distribution utility] was not supportive of a legislative bailout for nuclear power plants in 2018 or early 2019;

30. [The other electric distribution utility], including any of its executives, were supportive of or advocated for the appointment of [someone other than Public Official B] to the Public Utilities Commission of Ohio ("PUCO");

31. Borges was supportive of or advocated for the appointment of [someone other than Public Official B] to the Public Utilities Commission of Ohio ("PUCO");

\*\*\*

35. Borges was not involved in the crafting of any language or policy surrounding House Bill 6 ("HB 6");

36. Borges did not meet with, or have discussions with any legislators, legislative staff, policy staff, or Governor's office staff regarding HB 6;

37. Householder was not on conference calls that included Borges in April, May or June of 2019 concerning HB 6;

38. Longstreth was not on conference calls that included Borges in April, May or June of 2019 concerning HB 6;

39. Borges' lack of involvement and/or attendance at a June 3, 2019 meeting with Longstreth and others;

40. Clark was not on conference calls that included Borges in April, May or June of 2019 concerning HB 6;

41. Borges supported or otherwise encouraged FirstEnergy Solutions to hire [Attorney 1] in 2019;

42. [Attorney 2] provided advice to Generation Now in 2019, including any communication, including conference calls, that included both [Attorney 2] and Borges;

43. [Attorney 3] provided advice to Generation Now in 2019, including any communication, including conference calls, that included [Attorney 3] and Borges;

44. Cespedes, not Borges, communicated with FirstEnergy regarding funding for a potential challenge to the referendum petitions in July and/or August 2019;

45. Borges told a private investigator not to use GPS tracking devices on signature gatherers' vehicles when he learned it was illegal;

46. Borges insisted [Petition Services Co. 2] adopt a Code of Conduct for its employees, and drafted language for them to use in their employment agreements;

47. Borges told Clark and/or others not to "buy-out" or otherwise pay individual signature gatherers to quit their jobs with the referendum campaign[.]

Generally, these requests are material because they go to Borges' lack of knowledge and lack of involvement during key moments of the alleged RICO conspiracy, at least according to

the Indictment. This becomes even more relevant and material since the Indictment makes no specific allegation as to when Borges allegedly joined a RICO conspiracy. *See* Indictment, R.22, PageID 1256 (alleging "in or about 2016 and continuing to the present"). Evidence negating Borges' alleged involvement at any point in that time period (2016 through "the present") is material to the defense and exculpatory. So too is evidence negating Borges' knowledge of an alleged quid pro quo between Householder and FirstEnergy, as well as evidence showing a lack of knowledge regarding Generation Now and the specifics of money flowing to or from it during that time period. That is exactly what we believe Longstreth's and Cespedes' statements will show. More specifically, Borges submits that Longstreth would confirm requests 1 through 26 and that Cespedes would confirm requests 25 through 31 and 35 through 47.

Since these materials would negate an essential element of the alleged RICO conspiracy—knowingly and willfully joining the unlawful plan—they are not merely for impeachment. Moreover, Borges' request is not limited to materials that could fall within the definition of "statements" under the Jencks Act.

Borges made specific requests for these materials on April 16, June 7, and October 15. The Government refuses to produce them. Informal efforts to resolve this discovery dispute have been exhausted.

**Argument**

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the Government is obligated to disclose information to a defendant that is "material either to guilt or to punishment." That obligation extends to impeachment evidence. *See Giglio v. United States,* 405 U.S. 150, 153-54 (1972); *United States v. Bagley*, 473 U.S. 667, 677 (1985).

Borges submits that the materials requested are exculpatory *Brady* materials, regardless of whether they also fall within the subsets of impeachment *Brady* evidence or Jencks Act materials, because they negate an essential element of the alleged RICO conspiracy. *See e.g. United States v. Presser,* 844 F.2d 1275, 1278 (6th Cir. 1988) (explaining that "[i]mpeachment evidence need not be exculpatory in the traditional sense of tending to negate guilt. Rather, such material deals with the credibility of witnesses.") (citing *Giglio*, 405 U.S. at 154). The distinction between exculpatory *Brady* materials and impeachment *Brady* materials (aka *Giglio* materials) is crucial, as it distinguishes this request from cases where defendants sought only impeachment *Brady* material.

In cases where the impeachment evidence sought is also covered by the Jencks Act, the Sixth Circuit has routinely held that "the terms of the Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (citations omitted). "Put another way: the Jen[c]ks Act trumps *Brady* where impeachment evidence is Jencks Act material." *United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010).

In cases of non-Jencks Act *Giglio* material, Judge Ellis, of the Eastern District of Virginia, encapsulated the distinctions and concomitant timing succinctly:

> It is clear that "disclosure of all *Brady* material, including *Giglio* impeachment material, is governed by the same legal principle: evidence favorable to a defendant must be disclosed 'in time for its effective use at trial.' " *United States v. Beckford,* 962 F.Supp. 780, 788 (E.D.Va.1997). When the material at issue is pure impeachment material (*i.e.,* records of conviction, plea agreements, immunity agreements and the like), production of these materials a few days in advance of trial provides a defendant with "ample opportunity for review and effective use of the impeaching evidence" at trial. *Id.; see also United States v. Higgs,* 713 F.2d 39, 44 (3d Cir.1983) ("[A]ppellees' right to a fair trial will be fully protected if disclosure [of impeachment evidence] is made the day that the witness testifies."). This conclusion "is based on the fact that while *Giglio* material may have considerable impeachment value, the nature of that material usually does not require substantial advance time to prepare for its effective use at trial." *Id.; see also Higgs,* 713 F.2d at 44. In addition, "disclosure of *Giglio*

8

> material in useful form also serves ... to identify the witnesses to whom the material relates," which, in turn, "necessitates that the time of disclosure take into account such factors as the risk to witnesses." *Id.* at 788-89. Unlike pure *Giglio* impeachment evidence, "exculpatory evidence may require significant pre-trial investigation in order to be useful to the defendant at trial." *Id.* at 789. As a result, such exculpatory evidence must be produced on a prompt, ongoing basis.

*United States v. Le*, 306 F. Supp. 2d 589, 592 n.5 (E.D. Va. 2004).

These distinctions are well known to the Government. Indeed, the Government seems to agree that "unlike exculpatory *Brady* material, which could require pretrial investigation by the defense, impeachment evidence does not require substantial time to prepare for effective use at trial." *United States v. Sittenfeld,* OHSD 1:20-cr-142-DRC, Govt.'s Response, R.55, PageID 545 (citations omitted). In the *Sittenfeld* case, the Government chided the defendant's motion because it "fails to make any distinction between exculpatory *Brady* information and impeachment *Brady* information (*i.e., Giglio* material)." *Id.* at PageID 548. Here, the distinction is clear—Cespedes' and Longstreth's statements, whether covered by the Jencks Act or not, are material exculpatory information because they will tend to negate Borges' involvement in, and knowledge of, the unlawful plan alleged in the Indictment (*i.e.,* the Big Bribe).

Unlike impeachment evidence, these materials may require significant pre-trial investigation, such as identifying and interviewing additional defense witnesses, identifying relevant and admissible evidence, and may be relevant to the preparation of additional motions, including discovery motions.

**Conclusion**

Prompt disclosure of this exculpatory *Brady* material is warranted. Borges submits that designating the materials as "Tier 3" under the Amended Protective Order is sufficient to protect any concerns the Government may harbor regarding the disclosure. Alternatively, the Court

9

should compel the Government to produce the requested materials for an *in camera* inspection by the Court.

.

> Respectfully submitted,
>
> */s/ Karl H. Schneider*
> Karl H. Schneider (0012881), Lead Counsel
> Todd A. Long (0082296)
> MCNEES WALLACE & NURICK LLC
> 21 East State Street, Suite 1700
> Columbus, Ohio 43215
> Telephone: (614) 719-2843
> Facsimile: (614) 469-4653
> kschneider@mcneeslaw.com
> tlong@mcneeslaw.com
>
> *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Notice was electronically filed with the Clerk of the United States District Court using the CM/ECF system on October 21, 2021, which will send notification of such filing to all attorneys of record including Assistant United States Attorneys Emily Glatfelter and Matthew Singer.

> */s/ Karl H. Schneider*
> Karl H. Schneider (0012881), Lead Counsel