**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No.: 1:20-cr-077 |
|     Plaintiff, | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| Matthew Borges, | : | |
| | : | |
|     Defendant. | : | |

**DEFENDANT BORGES' REPLY TO GOVERNMENT'S RESPONSE
TO BORGES' MOTION FOR DISCLOSURE OF GRAND JURY TESTIMONY (R.96)**

Defendant, Matthew Borges ("Borges"), through counsel, hereby provides his Reply to the Government's Response in Opposition to Borges' Motion for Disclosure of Grand Jury Testimony (R.96). The Court should grant Borges' Motion (R.93) and order the production of SA Wetzel's grand jury testimony as requested.

**INTRODUCTION**

The issue is whether Borges has demonstrated a particularized need for disclosure of SA Wetzel's grand jury testimony under Rule 6(e)(3)(E)(ii). Borges has met that standard.

The Government argues that SA Wetzel did not make any false or misleading statements, but if he did, they were irrelevant or immaterial, and that any "conclusions" he drew are not subject to scrutiny. R.96 at PageID 1652-64. But many of the statements made by SA Wetzel are plainly false and the Government's contortions to dismiss or justify them amplify the need for disclosure.

1

The Government next argues that Borges is speculating about whether any false and misleading statements were made to the grand jury, since only some of the statements against Borges made it to the Indictment. R.96 at PageID 1664-66. Of course, Borges does not know what SA Wetzel said to the grand jury. But, unlike the cases cited by the Government, Borges has made more than a generalized claim. Borges has demonstrated, through particularized facts, the need for specified portions of the grand jury record, *i.e.*, SA Wetzel's testimony as to Borges. Moreover, simply because the Indictment has less factual assertions than the Affidavit does not mean that SA Wetzel presented less information to the grand jury than he did to the magistrate.

Finally, the Government argues (A) that Borges is seeking to challenge the grand jury's findings and (B) that alleged perjury before the grand jury can never be a basis for a motion to dismiss. R.96 at PageID 1666-69. The former argument is misdirected, and the latter is overstated. Borges cited *Basurto*, not for its bright line rule (which Borges acknowledged was rejected by the Sixth Circuit) but as a basis for a Fifth Amendment Due Process claim to dismiss an indictment when a grand jury considered perjured testimony. R.93 at PageID 1625. Indeed, according to the Sixth Circuit, "if a defendant can show that he was actually prejudiced by the grand jury's consideration of perjured testimony, then dismissal of the indictment may be warranted." *United States v. Sims-Robertson,* 16 F.3 1223 at *5 (6th Cir. 1994) citing *United States v. Adamo,* 742 F.2d 927, 939-41 (6th Cir. 1984). Whether that hurdle is cleared in a future motion is not at issue; for present purposes it is sufficient to establish that "a ground may exist to dismiss the indictment." Fed. R. Crim. P. 6(e)(3)(E)(ii).

## **ARGUMENT**

### I.    STATEMENTS IN THE COMPLAINT ARE FALSE OR MISLEADING

The Government tries to cast SA Wetzel's statements as "reasonable inferences and conclusions" or, failing that, as immaterial or irrelevant even if untrue. R.96 at PageID 1652-64. The justifications for that conclusion fall into three categories:

1. Admitting to outright falsehoods but dismissing them as immaterial or irrelevant, despite the fact that the Government drew inferences from those false statements to establish intent, involvement, and knowledge of the crime alleged. R.96 at PageID 1663.

2. Further altering facts or conflating different conversations to establish a narrative that departs from reality. R.96 at PageID 1653-59.

3. Claiming an affiant is allowed to draw any inferences or conclusions he wants—whether they are based on fact or not—without later scrutiny. R.96 at PageID 1655, 1662, 1665.

An affiant is required to present truthful information and is prohibited from purposefully manipulating the inferences a magistrate will draw by reporting less than the total story or by withholding information damaging to the Government's case in order to present an incomplete or misleading picture. *See Franks v. Delaware,* 438 U.S. 154, 164-68 (1978); *United States v. West,* 520 F.3d 604, 611-12 (6th Cir. 2008); *United States v. Stanert,* 762 F.2d 775, 781 (9th Cir.), *amended,* 769 F.2d 1410 (9th Cir. 1985). SA Wetzel's statements were not "reasonable inferences and conclusions" as the Government argues. R.96 at PageID 1652. He provided false and misleading information, withheld damaging information to present an incomplete and misleading picture, drew inferences upon inferences, and usurped the magistrate's duty (and ability) to conduct an independent evaluation of probable cause.

The Government makes liberal use of *United States v. Powell*, 2010 WL 3476080, at *9 for the proposition that an "affiant's conclusion is merely an opinion and cannot be legitimately characterized as false or misleading." *See e.g.* R.96 at PageID 1662. However, the cited *dicta* is taken out of context. The district court in *Powell* rejected a defense request for a *Franks* hearing

3

because the defendant "points to no facts set forth in the affidavits that were allegedly false or misleading. Instead, Defendant takes issue with the affiant's conclusion—an opinion based on the facts that were set forth in the paragraphs preceding that opinion[.]" *Powell*, 2010 WL 3476080, at *9. That is far from the case here.

<u>Government now admits SA Wetzel Falsely Quotes Borges (Paragraph 225)</u>

"Borges stated '*Larry was putting the squeeze*' on Associate 3" is a false statement. (Wetzel Aff. at ¶ 225.) The Government concedes as much. R.96 at PageID 1663 (affiant "attributed it to Borges instead of CHS.") But the Government argues that, even though Borges never said those words and SA Wetzel knew it, it was an "immaterial omission[.]" R.96 at PageID 1663. But that is not an omission. It is an affirmative attribution of a statement.

It was CHS-1 who asked a question of Borges, during a recorded conversation, using similar words, but Borges *did not even respond to the question*.

> CHS-1: "Is Larry putting the squeeze on him?" [referring to Associate 3]
> Borges: "Larry thinks that this stuff is great for us."
> CHS-1: "Really?"
> Borges: "Yup."
> CHS-1: "The news coverage?"
> Borges: "Yup."
> CHS-1: "So, I know"
> Borges: "I'm just telling you."
> [CHS-1 then changes the subject]

(2019.09.13_Audio 1_TIER3-8214 at 32:19.)

Paragraph 225 fits a pattern: SA Wetzel makes a factual representation that is false or, at minimum, misleading and then he draws an inference on that unfounded premise. After stacking up the false and misleading statements and the unfounded premises drawn therefrom, he

4

concludes that Borges had knowledge of the alleged unlawful plan and acted with criminal intent.

*SA Wetzel's False Statements About Bribing CHS-1 for Inside Information (Paragraphs 218, 224, 225, and 226)*

Borges demonstrated that a factual assertion in paragraph 218, where SA Wetzel states that "CHS-1 was employed by Ballot Campaign", is false. R.93 at PageID 1615. In response, the Government attempts to brush aside the false statement by claiming the term "Ballot Campaign" was defined broadly in the Affidavit. R.96 at PageID 1660. It was not and CHS-1 was not employed by the Ballot Campaign. CHS-1 was employed by a vendor to the Ballot Campaign, and, cutting through all clutter presented by the Government in its response, CHS-1 was not "employed by Ballot Campaign," as stated by Wetzel. There is no getting around that. The Government's novel, and inaccurate, interpretation of CHS-1's employment status does not somehow make the original false statement true.

Moreover, CHS-1's employment status, and the terms of his employment, is material to any claim of Honest Services Fraud against Borges (a predicate of the RICO conspiracy). The Government seems to agree. R.96 at PageID 1660 ("What matters is Borges offered money to induce CHS 1 to violate his duty to his employer"). SA Wetzel was attempting to show a violation of CHS-1's duty as an employee when he wrote: "As described below, Borges offered to and did pay CHS-1 to provide inside information about the Ballot Campaign such as the number of signatures collected, the number of collectors, and geographic focus of collection efforts." That statement is also false. R.93 at PageID 1615-23.

The Government argues "whether the signatures were 'confidential information' under the [employment] contract is irrelevant." R.96 at PageID 1659-60. That is totally wrong. Whether the signature count was confidential under the terms of CHS-1's employment contract

5

is central to whether Borges intended for CHS-1 to violate the NDA provisions of the employment contract, *i.e.*, whether Borges asked for inside information. And it was not confidential. R.93 at PageID 1616-17.

Section 9, paragraph (b) of CHS-1's employment contract specifically excludes from "Confidential Information" any information that "[i]s now **or subsequently becomes** generally available to the public through no wrongful act of the Employee[.]" (TIER3-US0008147) (emphasis added). The number of signatures gathered was going to be publicly disclosed by the referendum campaign. Indeed, SA Wetzel must have been aware, not only that the number of signatures would subsequently be disclosed, that the number of signatures gathered was actually being disclosed, because he wrote: "the Enterprise's own daily, internal estimates about the signature collection were not adding up to the numbers *claimed by the ballot initiative proponents*." Wetzel Aff. at ¶ 216 (emphasis added). Further, the specifics of the daily signature counts *did become generally available to the public*. CHS-1's employer testified and presented a chart about those very facts during a hearing on October 21, 2019, before the Honorable Judge Sargus. *See* Tr. Prelim. Inj. Hr., R.48 at PageID 777-85, 802, *Ohioans Against Corporate Bailouts v. LaRose,* 2:19-cv-4466 (S.D. Ohio). Borges believes that SA Wetzel was aware of that hearing.

The Government then takes a tortured and unreasonable path in its attempt to support the statement that Borges asked CHS-1 for "the number of collectors" and the "geographic focus of collection efforts," but in so doing confirms that Borges did not in fact ask for that information. R.96 at PageID 1660-61. Contrary to the Government's assertions, asking if CHS-1 has access "to the statewide number or only his region" is not the same as asking about the "geographic focus of collection efforts." *Id.* at 1660. If one were asking about "the geographic focus of

6

collection efforts" then one would either ask about the focus of the efforts or ask about specific places. Borges did neither.

The Government finds a reference by Borges, in a single call, about signature gatherers. R.96 at PageID 1660. Yet, that too misses the mark. On September 19, Borges asked CHS-1 "We're hearing you guys are bringing in a whole bunch of people from out of state, is that true?" (9.19.2019(1.12PM)_TIER3-8138 at 2:40.) CHS-1 confirmed that there was a "rural team" being brought to Ohio but he did not know when, where, or how many, and Borges never asked him to find that out. *Id.* SA Wetzel's statement—that Borges asked about the "number of signature gatherers"—is misleading because it unreasonably suggests that Borges asked for something that he never did.

Continuing its pattern of drawing inferences from false statements, even the Government's response mischaracterizes the September 19 conversation. The Government omits that early in the conversation, Borges asked "Do you know a number?" referring to the number of signatures collected. (9.19.2019(1.12PM)_TIER3-8138 at 1:30.) CHS-1 indicated he would not know until a meeting on the upcoming Friday. Then Borges asked about "people from out of state." *Id.* at 2:40. According to the Government, when Borges then asked, "Do you know what your region looks like?" it was "relating to the number of signature collectors in CHS 1's region." R.96 at PageID 1661. Not true. It was relating to the number of signatures collected, and CHS-1 responded that it was in the "mid-teens." (9.19.2019(1.12PM)_TIER3-8138 at 4:10.) CHS-1's response would not have made sense if the question was the number of signature gatherers. Then, at the end of the conversation, when Borges said "if you know something on Friday, that would be really, really helpful for us to know" he was clearly referring to the prior

7

subject of their conversation—how many signatures had been gathered, information that was not confidential. (9.19.2019(1.12PM)_TIER3-8138 at 5:02.)

The Government asserts that SA Wetzel's conclusion—that Borges paid CHS-1 a bribe—cannot be characterized as false or misleading because it was only his conclusion.[1] R.96 at PageID 1662. The Government, like SA Wetzel, ignores the entire picture and omits facts that mar the picture it paints. *See* R.93 at PageID 1617-23. For instance, the Government continues to make the false assertion that Borges threatened CHS-1 to support an inference that he was acting with criminal intent. R.96 at PageID 1661-62. The recording makes it clear that Borges was making a joke with a friend that he was trying to help out of a bad financial situation. R.93 at PageID 1622-23.

| | | |
|---|---|---|
| Borges: | "So I've got a Kasich reunion thing that I need to pull together that I'm going to do for Judi French." | |
| CHS-1: | "Uh-huh." | |
| Borges: | "Of course, I committed to it and I'm never going to have time for it, you know" | |
| CHS-1: | "Right" | |
| Borges: | "And it doesn't have to happen like tomorrow or anything like that so, stuff like that that I'm committing to that, I need, I could use help with." | |
| CHS-1: | "Okay" | |
| Borges: | "I could use your help with that." | |
| CHS-1: | "Alright, that's fine" | |
| Borges: | "I just can't, you know." | |
| CHS-1: | "Right" | |

---

[1] The Government even states that Borges has taken a position inconsistent with statements made during two proffer sessions with the Government. R.96 at PageID 1669, n14. Mildly put, Borges' recollection of those sessions differs from the telling by the Government. But that is an issue for another day.

| | |
|---|---|
| Borges: | "I feel, I feel terrible for what you are going through with your kid and I just want to make sure you're in a place of paying your child support." |
| CHS-1: | "No, I get it, I understand that, and I appreciate it." |
| \*\*\* | |
| Borges: | "Yeah, the best way for you and I, in case there is ever any question, is that you're an independent contractor" |
| CHS-1: | "Right" |
| Borges: | "And you can work on whatever you want, we are making sure this is totally separate and quite frankly I do need some help on this stuff" |
| CHS-1: | "Right" |
| Borges: | "So, it's not immediate I don't need you to start working on it tomorrow, but I do want you to take care of the issues that you've got" |
| CHS-1: | "Right" |
| Borges: | "So" |
| CHS-1: | "I knew that" |
| Borges: | "Um and uh you know if I get a call from Randy Ludlow about this, I'm going to blow your house up" |
| CHS-1: | "You don't have to worry about that, just plant like a small nuclear reactor somewhere in the basement" |
| Borges: | [laughter] |
| CHS-1: | "And you've probably got a bunch of those in the trunk" |
| Borges: | "You know what, I you know after watching this whole shit show for the last week, I just thought to myself, let these fuckers burn each other up, you know? Like" |
| CHS-1: | "Right" |
| Borges: | "I don't need, I don't care where everyone is going every day, I don't care" |
| CHS-1: | "Right" |

(2019.09.13_Audio 1_TIER3-8214 at 26:28-27:00; 31:00-31:58).

9

*Affidavit Paragraphs 55, 56, 57, and 59*

The Government spins these paragraphs as reasonable conclusions about Householder's alleged control of Generation Now. R.96 at PageID 1653. But Borges never said that Householder was involved in Generation Now, nor anything about Householder and his relationship to Generation Now. R.93 at PageID 1623-24. For instance, the Government argues that "Recorded statements by Borges to CHS 1 also show Householder's use of Generation Now, and further confirm Clark's statements' is a reasonable conclusion based on Borges' cited statements[.]" R.96 at PageID 1653. But Borges said nothing about Generation Now nor anything that would suggest "Householder's use of Generation Now." SA Wetzel's conclusions are unreasonable.

Taking things further, the Government now claims that statements by Borges "support the reasonable conclusion that Householder '*used*' Generation Now money to pay Borges to further the HB 6 effort[.]" R.96 at PageID 1654. The inferential leap the Government makes here is astounding and untrue. It also reinforces Borges' need for the grand jury transcript.

*****

The Government now admits SA Wetzel falsely quoted Borges. That quote was used to establish knowledge and intent. SA Wetzel falsely claimed that CHS-1 was employed by the ballot campaign. SA Wetzel mischaracterized other statements by Borges, presented Borges' statements out of context and painted a misleading picture of what really happened. SA Wetzel asserted that Borges sought information that he in fact never asked for and leapt to conclusions without a factual basis. Those statements, inferences, and mischaracterizations about Borges *are false*. And if, in fact, those statements, inferences, and mischaracterizations were presented to the

10

grand jury, Borges needs to know that, so counsel can prepare the appropriate motion to dismiss the charge, plain and simple.

## II. BORGES HAS DEMONSTRATED A PARTICULARIZED NEED

The Government argues that, even if Borges' claims about the Affidavit are true, Borges is speculating about whether any false and misleading statements were made to the grand jury, since only some of the statements against Borges made it to the Indictment. R.96 at PageID 1664-66. Of course, Borges does not know what SA Wetzel said to the grand jury—that is the point of Borges' motion, to find out. But it is reasonable to conclude, and in fact quite likely, that SA Wetzel presented the same false and misleading information to the grand jury that he presented to the magistrate, notwithstanding which paragraphs made it to the Indictment and which did not.

However, this does not make Borges' claim a "general claim" as argued by the Government. R.96 at PageID 1665. The cases cited by the Government are easily distinguishable. In *Dimora*, the defendant wanted the grand jury materials to identify confidential informants and any deals they received because "there is a 'possibility than an informant may possess evidence relevant to Mr. Dimora's innocence.'" *United States v. Dimora,* 836 F.Supp.2d 534, 552 (N.D. Ohio 2011). The court rejected Dimora's motion because it "offers nothing more than general representations that the transcripts *may contain* relevant and/or exculpatory evidence." *Dimora*, 836 F.Supp.2d at 553. That is not the situation here.

In *Washam*, the court denied a *pro se* motion "for a full transcript of the grand jury proceedings" based on allegations that an FBI agent committed perjury before the grand jury. *United States v. Washam,* 2007 WL 1166005, at *1 (W.D. Ky. Apr. 17, 2007). Importantly, the court noted that the defendant already had a copy of the FBI agent's grand jury testimony.

11

*Washam* at *1. The request for the other portions of the grand jury transcript was based on nothing more than a generalized desire to review the records. *Id.* This case weighs in Borges' favor. Unlike Washam, Borges does not already have the FBI agent's grand jury testimony. And, unlike Washam, Borges is not requesting the entire grand jury record.

And, unlike Dimora, Borges has demonstrated, through particularized facts, the need for specified portions of the grand jury record, *i.e.*, only SA Wetzel's testimony and only as to Borges.

Borges' need for disclosure of those select portions of the grand jury record outweigh the public interest in secrecy. Indeed, the Court can balance these competing interests by ordering protective limitations on Borges' use of the disclosed materials.

### III. A GROUND MAY EXIST TO SUPPORT A MOTION TO DISMISS

The Government argues (A) that Borges is seeking to challenge the grand jury's findings and (B) that alleged perjury before the grand jury can never be a basis for a motion to dismiss. R.96 at PageID 1666-69. The former argument is misdirected, and the latter is overstated.

Contrary to the Government's suggestion, Borges is not seeking to challenge the grand jury's findings. Instead, Borges asserted that a colorable ground for dismissal for a violation of the Fifth Amendment's Due Process clause exists when an indictment is based, at least in part, on alleged perjury. R.93 at PageID 1625, citing *Basurto*. That is not the same as challenging a grand jury's probable cause finding.

Borges was clear in his motion that the Sixth Circuit did not adopt the Ninth Circuit's bright line rule established in *Basurto*. R.93 at PageID 1625. However, and as the Government knows, that does not mean that perjury before the grand jury can never be a basis to dismiss an

indictment.[2]  According to the Sixth Circuit, "if a defendant can show that he was actually prejudiced by the grand jury's consideration of perjured testimony, then dismissal of the indictment may be warranted." *United States v. Sims-Robertson,* 16 F.3 1223 at *5 (6th Cir. 1994) citing *United States v. Adamo,* 742 F.2d 927, 939-41 (6th Cir. 1984). While that may be a high hurdle to clear in a future motion, for present purposes it is sufficient to establish that "a ground may exist to dismiss the indictment" and for disclosure of SA Wetzel's grand jury testimony. Fed. R. Crim. P. 6(e)(3)(E)(ii).

## CONCLUSION

For these reasons, the Court should grant Borges' Motion for Disclosure of Grand Jury Testimony.

Respectfully submitted,

*/s/ Karl H. Schneider*
Karl H. Schneider (0012881), Lead Counsel
Todd A. Long (0082296)
MCNEES WALLACE & NURICK LLC
21 East State Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 719-2843
Facsimile: (614) 469-4653
kschneider@mcneeslaw.com
tlong@mcneeslaw.com

*Counsel for Defendant*

---

[2] The Government blurs the lines between what is required under Rule 6(e) and what is required under a motion to dismiss. R.96 at PageID 1668 (arguing that Borges failed to show actual prejudice so his motion should be denied).  Rule 6(e) does not require a defendant to show actual prejudice, but a motion to dismiss does. Clearly, this is not a motion to dismiss and whether Borges can demonstrate actual prejudice in future motion is not an issue before the Court.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Reply was electronically filed with the Clerk of the United States District Court using the CM/ECF system on December 2, 2021, which will send notification of such filing to all attorneys of record including Assistant United States Attorneys Emily Glatfelter and Matthew Singer.

*/s/ Karl H. Schneider*
Karl H. Schneider (0012881), Lead Counsel