UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-77 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| MATTHEW BORGES (4), | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT BORGES' MOTION
FOR DISCLOSURE OF GRAND JURY TESTIMONY**

This criminal case is before the Court on Defendant Matthew Borges' motion for disclosure of grand jury testimony (Doc. 93) and the parties' responsive memoranda (Docs. 96, 100). Also before the Court is Defendant's sealed submission of the discovery materials cited in and relevant to the instant motion.[1]

## I. BACKGROUND

On July 17, 2020, Magistrate Judge Bowman signed a Criminal Complaint, finding probable cause that Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now conspired to participate in an enterprise's affairs through a pattern of racketeering activity (the "RICO Conspiracy"), in violation of 18 U.S.C. § 1962(d). (Docs. 2, 5). The Complaint was supported by an Affidavit signed

---

[1] Because the discovery materials referenced in Defendant's motion are designated as Tier 3 materials, Defendant, pursuant to the Amended Protective Order, provided copies to the Court for filing under seal (with copy to opposing counsel). However, given the format of the discovery materials provided (*i.e.*, video and audio files), as well as the volume, the sealed submission cannot be electronically docketed. Nevertheless, Defendant's submitted discovery materials have been manually filed, are in the Court's custody, and are a part of the record.

by Special Agent Blane Wetzel ("SA Wetzel") of the Federal Bureau of Investigation ("FBI"). (*Id*. at 2-82).

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendants Householder, Longstreth, Clark, Borges, Cespedes, and Generation Now with the RICO Conspiracy set forth in the Criminal Complaint. (Doc. 22). To date, three of the named co-defendants—Jeffrey Longstreth, Juan Cespedes, and Generation Now—have pleaded guilty to the charge (Min. Entries, Oct. 29, 2020, Feb. 9, 2021), and Defendant Clark has died (Doc. 88).[2] Thus, Defendants Borges and Householder are the only remaining, unresolved defendants in this case.

Defendant Borges now moves for disclosure of SA Wetzel's grand jury testimony, to the extent that the testimony relates to Defendant Borges' involvement in the RICO Conspiracy. (Doc. 93). Specifically, Defendant argues that "SA Wetzel made materially false and misleading statements regarding [Defendant] Borges in … the July 17, 2020 Affidavit in Support of a Criminal Complaint…." (*Id*. at 3). Accordingly, Defendant asserts that SA Wetzel's grand jury testimony was likely to have been false as well, or, otherwise, was inconsistent with SA Wetzel's sworn Affidavit. (*Id*.) Thus, Defendant argues that disclosure is warranted because the grand jury testimony "may constitute" grounds for dismissal and/or "exculpatory (impeachment)" evidence. (*Id*.)

---

[2] Defendants Longstreth, Cespedes, and Generation Now are awaiting sentencing (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). The case as to Defendant Clark was dismissed following his death. (Doc. 88).

## II. STANDARD OF REVIEW

The Supreme Court "consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). "This 'indispensable secrecy of grand jury proceedings,' must not be broken except where there is a <u>compelling necessity[,] … shown with particularity</u>." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)) (emphasis added). The moving party must also demonstrate that the need for disclosure "is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222.

Upon a strong showing of a particularized, narrowly-tailored need, the Court "may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter … at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Even still, Rule 6(e) "require[s] a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).

## III. ANALYSIS

Defendant moves for disclosure of SA Wetzel's grand jury testimony, arguing that the allegedly false statements in the Affidavit lead to one of two possible conclusions—specifically, that: (1) SA Wetzel's grand jury testimony was *consistent* with his Affidavit and was, therefore, false, which "may constitute a ground to dismiss the Indictment"; or

3

(2) SA Wetzel's grand jury testimony was *inconsistent* with his Affidavit, in which case the grand jury testimony constitutes "exculpatory (impeachment) evidence under *Brady*…." (Doc. 93 at 3).[3] Defendant's motion cites to and discusses eight paragraphs in the Affidavit—specifically, Doc. 5 at ¶¶ 55, 56, 57, 59, 218, 224, 225, and 226—which paragraphs Defendant asserts contain false and misleading statements. (Doc. 93 at 4-13). Defendant's motion also includes excerpts from the discovery materials, which excerpts Defendant alleges undermine SA Wetzel's statements in the Affidavit. (*Id.*)[4]

The Government opposes disclosure of the grand jury testimony for three reasons. (Doc. 96). First, the Government asserts that none of the cited paragraphs in the Affidavit are false or misleading, but rather constitute SA Wetzel's reasonable inferences, conclusions, or interpretations—supported by independent evidence—of Defendant's communications and conduct. (*Id.* at 3-15). Second, the Government asserts that Defendant is merely speculating as to what the grand jury transcripts "may" contain and, therefore, Defendant fails to set forth a "particularized need" for the grand jury transcripts. (*Id.* at 15-17). And, third, the Government argues that Defendant has failed to show that the grand jury transcripts will offer meritorious grounds upon which

---

[3] In his motion, Defendant also offers a third possibility—that SA Wetzel did not testify about Defendant Borges before the grand jury, in which case Defendant acknowledges that his motion would be moot. (Doc. 93 at 3). However, given the Government's opposition to Defendant's motion, the Court will assume that the motion is not moot.

[4] The Court notes that Defendant's inclusion, in his publicly filed pleading, of verbatim excerpts from the Tier 3 discovery does not violate the letter of the Amended Protective Order, but it does, in this Court's view, run afoul of the Amended Protective Order's intent. On October 22, 2021, the Court emailed the parties and offered an opportunity to seek revision of the Amended Protective Order, so as to avoid a similar situation in the future. However, neither party has since availed itself of the Court's offer.

4

Defendant can move to dismiss. (*Id*. at 17-20). Accordingly, the Government argues that disclosure of the grand jury materials should be denied.

As fully set forth below, the Court concludes that the statements in SA Wetzel's Affidavit were not false or misleading and, in any event, disclosure of the grand jury transcripts is unwarranted.

### A. SA Wetzel's Statements in the Affidavit Were Not False or Misleading

Defendant argues that eight identified paragraphs in the Affidavit contain false or misleading statements. In response, the Government states that SA Wetzel's statements are neither false nor misleading and, while not verbatim recitations of Defendant's conversations, the statements are nevertheless reasonable inferences that SA Wetzel drew from the totality of the circumstances. The Court agrees.

An affidavit fails to establish probable cause if it is "bare bones"—*i.e.*, if it "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge …." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)) (emphasis added). "Recital of some of the underlying circumstances in the affidavit is essential…." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). "However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the [finding] by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.*

5

Notably, probable cause is not an exacting standard, but rather "a fluid concept—turning on the assessment of probabilities in particular factual contexts," based upon the totality of the circumstances. *Florida. v. Harris*, 568 U.S. 237, 244 (2013). Thus, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be … useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States,* 267 U.S. 132, 162 (1925)).

Moreover, probable cause does not require direct knowledge, but can be established based upon hearsay and reasonable inferences. *See*, *e.g.*, *Illinois v. Gates*, 462 U.S. 213, 241 (1983); *Brown*, 460 U.S. 730, 741-43. Indeed, upon review of reliable evidence, "a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person. … [P]ractical people formulate[] certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers." *United States v. Cortez*, 449 U.S. 411, 418 (1981); *see also, Brown*, 460 U.S. at 746 (Powell J., concurring); *United States v. Pacheco*, 841 F.3d 384, 396 (6th Cir. 2016).

In short, what the case law establishes is that law enforcement officers are permitted to rely upon their professional experience, as well as their knowledge regarding the totality of the circumstances in a particular investigation, in order to draw reasonable inferences and reach conclusions to support a showing of probable cause in an affidavit. Moreover, it is entirely plausible that a law enforcement officer may have drawn

6

incorrect conclusions, or that the inferences drawn are subject to debate. But that alone does not render a conclusion or inference impermissible, nor does it invalidate the probable cause determination. Indeed, only intentional and material misrepresentations are subject to scrutiny. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Here, while Defendant alleges that the discovery provided in support of his motion definitively shows that SA Wetzel's statements were false or misleading, the Court disagrees. The Government's response in opposition sets forth, in detail, that SA Wetzel's statements were either reasonable summations of Defendant's conversations or are reasonable inferences drawn from Defendant's own statements and conduct, as well as the statements and conduct of other individuals in the investigation.[5]

Even to the extent that SA Wetzel misattributed a statement to Defendant Borges, the Court cannot conclude that the error was intentional or material. For instance, Defendant Borges takes issue with paragraph 225 of the Affidavit, in which Defendant argues that SA Wetzel attributes to Defendant Borges, as a direct quote, the statement: "*Larry was putting the squeeze on [Associate 3]*." (Doc. 93 at 4). However, it bears noting that paragraph 57 of the Affidavit includes the exact, verbatim recitation of the "squeeze" conversation. (Doc. 5 at 20, ¶ 57). If SA Wetzel were trying to mislead the Magistrate Judge, he would not have included the actual conversation.

---

[5] The Government further notes that, during post-Indictment proffer sessions, Defendant admitted to law enforcement that he did in fact engage in some of the conduct that he now claims form the basis of SA Wetzel's allegedly false statements and testimony. (Doc. 96 at 20, n.14). Any such admissions are not relevant to SA Wetzel's knowledge at the time of the Indictment, but speak to whether any potential prejudice could have resulted from SA Wetzel drawing inferences that were later substantiated by Defendant.

7

Ultimately, Defendant is, of course, free to disagree with SA Wetzel's statements and to test the reliability of those statements—but Defendant must do so in the context of trial. Pretrial disclosure of the grand jury transcripts is not warranted.

### B. Defendant Fails to Show a Particularized Need for Disclosure

Defendant states that SA Wetzel's grand jury transcript is needed in order to file a motion to dismiss or, alternatively, should be disclosed as "exculpatory (impeachment)" evidence under *Brady*. The Court disagrees in both regards.

#### *1. Impeachment Evidence is Subject to Disclosure Under Jencks*

As an initial matter, the Court finds no merit in Defendant's contention that any inconsistent testimony offered by SA Wetzel would necessarily be <u>exculpatory</u>. First, the Government has no obligation to provide exculpatory evidence to the grand jury. *United States v. Adamo*, 742 F.2d 927, 937 (6th Cir. 1984), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001). Therefore, it is counterintuitive to assume that SA Wetzel would freely mislead a federal Magistrate Judge (to whom truthful disclosure was a lawful obligation), only to turn around and gratuitously provide exculpatory evidence to a federal grand jury. Thus, even if SA Wetzel's federal grand jury testimony is in any way inconsistent with his Affidavit, those inconsistencies constitute impeachment evidence, not exculpatory evidence.

Regardless, whether impeachment or exculpatory, such evidence would constitute *Brady* material. *United States v. Bagley*, 473 U.S. 667, 676 (1985). However, because the material in this instance is the prior statement of a prospective government witness, its disclosure is controlled by the Jencks Act. 18 U.S.C. § 3500. And the Sixth Circuit

8

has consistently held that "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act … the terms of [the Jencks] Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (citing *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994)). Under Jencks, the Government is not obligated to disclose the evidence until after the witness testifies at trial, and this Court cannot require premature disclosure. 18 U.S.C. § 3500(a).

Accordingly, even to the extent Defendant believes that the grand jury transcript constitutes *Brady* material, disclosure now is improper.

### 2. *Defendant Lacks Grounds to Challenge the Sufficiency of Indictment*

Defendant argues that if SA Wetzel's grand jury testimony was false or misleading, it "may" support a motion to dismiss. (Doc. 93 at 3). Beyond the speculative nature of this assertion, the Court finds that Defendant could not bring a valid motion to dismiss the Indictment because any such motion would impermissibly second-guess the findings of the grand jury. Accordingly, disclosure of the grand jury testimony for this purpose is futile and unwarranted.

"An indictment returned by a legally constituted and unbiased grand jury, … if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956). Accordingly, absent an alleged defect in the composition of the grand jury itself, "'**a challenge to the reliability** or competence of the evidence' supporting a grand jury's finding of probable cause '**will not be heard**.'" *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *United States v. Williams,* 504 U.S. 36, 54 (1992)) (emphasis added).

9

This is true, even if the grand jury heard perjured or inaccurate testimony. *United States v. Calandra*, 414 U.S. 338, 345 (1974) ("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence").

That said, the Sixth Circuit has held that "if a defendant can show that he was actually prejudiced by the grand jury's consideration of perjured testimony, then dismissal of the indictment may be warranted." *United States v. Sims-Robertson*, 16 F.3d 1223 (6th Cir. 1994) (citing *Adamo*, 742 F.2d at 939–41). However, even assuming that such a challenge to the indictment were permissible, it would still necessarily require definitive evidence that the witness was not merely mistaken in his testimony, but in fact knowingly provided a false statement on a material issue. *See* 18 U.S.C. § 1623 (proscribing "knowingly mak[ing] any false material declaration…" to a federal grand jury). Moreover, there would need to be a definitive showing that there was no evidence considered by the grand jury, other than the perjured testimony. *Adamo*, 742 F.2d at 939. Indeed, "'[i]t is enough … that there is *some* competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false.'" *Id.* (quoting *Coppedge v. United States,* 311 F.2d 128, 132 (D.C.Cir. 1962)) (italicized emphasis in original; underlined emphasis added). Any showing of additional evidence would necessarily end the challenge, given that "federal courts are not permitted to test the evidence supporting an indictment." *Id.*

Here, this Court has already determined that there is nothing to suggest that SA Wetzel offered false testimony, let alone did so knowingly. Moreover, there is no evidence to suggest that the information in the eight paragraphs Defendant identifies were material to the Indictment and/or that they were otherwise unsupported by other evidence. And, finally, there is no evidence that any testimony given before the grand jury resulted in prejudice to the defense.

Accordingly, any motion to dismiss the Indictment, filed by Defendant, and based upon an allegation that SA Wetzel gave false or misleading testimony before the grand jury, would necessarily be denied. And, thus, Defendant cannot show a particularized need for disclosure of the grand jury testimony.

## IV.  CONCLUSION

Based upon the foregoing, Defendant Matthew Borges' Motion for Disclosure of Grand Jury Testimony (Doc. 93) is **DENIED**.

**IT IS SO ORDERED.**

Date:  1/26/2022

Timothy S. Black
United States District Judge