IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | : | |
| | : | Case No.: 1:20-cr-077 |
| Plaintiff, | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| **Matthew Borges,** | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT MATTHEW BORGES' MOTION TO STRIKE PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT

Defendant, Matthew Borges ("Borges"), by and through undersigned counsel, hereby moves the Court pursuant to Federal Rule of Criminal Procedure 7(d) to:

- strike portions of the Indictment that purport to allege violations of private-sector honest services fraud (18 U.S.C. §§ 1343, 1346) because that statute is, as applied, void for vagueness; and,

- strike portions of the Indictment that purport to allege violations of the Travel Act because the alleged predicate offense, O.R.C. § 3517.22, is a minor state offense that is not an offense of bribery for purposes of the Travel Act and the prosecution violates principles of due process and federalism.

The reasons in support of this Motion are fully set forth in the attached Memorandum in Support.

Respectfully submitted,

*/s/ Karl H. Schneider*
Karl H. Schneider (0012881), Lead Counsel
Todd A. Long (0082296)
MCNEES WALLACE & NURICK LLC
21 East State Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 719-2843
Facsimile: (614) 469-4653
kschneider@mcneeslaw.com
tlong@mcneeslaw.com

*Counsel for Defendant*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Portions of the Indictment against Borges purporting to allege violations of private-sector honest services fraud and the Travel Act must be stricken for two reasons. First, the private-sector honest services fraud statute as applied in this case is void for vagueness. Second, alleged violations of the Travel Act, predicated on O.R.C. § 3517.22(A)(2), violates constitutional principles of due process and federalism because the alleged state predicate offense is not an offense of bribery for purposes of the Travel Act. Because these allegations do not allege any cognizable racketeering activity, they are irrelevant and prejudicial and must be stricken from the Indictment.

### II. FACTS

Borges is charged with one count of RICO conspiracy under 18 U.S.C. 1962(d). (R. 22, Indictment.) "The RICO conspiracy statute, simple in formulation, provides: 'It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.' 18 U.S.C. § 1962(d)." *Salinas v. United States*, 522 U.S. 52, 63 (1997). Here, the Indictment alleges, in pertinent part, that Borges conspired with others to violate § 1962(c),

> that is, to conduct and participate directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, … consisting of multiple acts indictable under 18 U.S.C. §§ 1343, 1346 (relating to honest services wire fraud); *** 18 U.S.C. § 1952 (relating to racketeering, including multiple acts of bribery under Ohio Revised Code § 3517.22(a)(2)[.]

(R.22, Indictment, PageID 1256-57.)

The specific allegations of private-sector honest services fraud and the Travel Act are:

> 52. It was part of the conspiracy that **Householder's Enterprise** bribed and attempted to bribe employees and agents of the Ballot Campaign to improperly discharge their campaign duties and to obtain information about the Ballot Campaign's organization in order to defeat the Ballot Campaign[.] (*Id.* at PageID 1261.)
>
> 123. During the fall of 2019, among other things, **Householder's Enterprise** used Company-A-to-**GENERATION-NOW** money paid through Front Company to bribe and attempt to bribe signature collectors working for the Ballot Campaign, via Petition Services Co. 2. (*Id.* at PageID 1282.)
>
> 124. **Householder's Enterprise** discussed the tactic of bribing the signature collectors to defeat the Ballot Campaign during recorded conversations. On or about September 23, 2019, **CLARK** explained, with **HOUSEHOLDER** present, "*so we have to go out on the corners and buy out their people every day. We started doing that today and everybody's have a fucking shit fit.*" **CLARK** continued, "*if we know off 25 people, collecting signatures, it virtually wipes them out in next 20 days; this ends the whole fucking thing, ends in, that how hard it is, in addition to the TV, the direct mail, and everything else…*" It was at this point in the conversation, when **HOUSEHOLDER** interrupted, and added, "*It is so important, it is so important, that they are not successful, because when the legislature votes on something it needs to stay law.*" After this recording, **CLARK** went on to have over 40 telephone contacts with an individual from Petition Services Co. 2, who was contacting the Ballot Campaign's signature collectors (*Id.* at PageID 1282-83.)
>
> 125. *** including a bribe payment to a Ballot Campaign insider for information[.] (*Id.* at PageID 1283.)
>
> 126. On or about September 2, 2019, **BORGES** offered CHS-1, an employee and/or agent of the Ballot Campaign, bribe money for inside information about the Ballot Campaign to further **Householder's Enterprise's** efforts. (*Id.* at PageID 1283.)
>
> 127. On or about September 13, 2019, using funds from the 17 Consulting account, which was funded solely by wires from GENERATION NOW, BORGES paid CHS-1 $15,000 for inside information about the Ballot Campaign. Following the exchange, BORGES asked the employee/agent on a number of occasions for the

4

number of total signatures the Ballot Campaign had collected[.] (*Id.* at 1283.)

## III. DISCUSSION

### A. The Court's Authority to Strike Prejudicial Surplusage

Pursuant to Rule 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment[.]" Fed. R. Crim. P. 7(d). The rule "serves to 'protect the defendant against immaterial or irrelevant allegations in an indictment, ... which may ... be prejudicial.'" *United States v. Berroa*, 856 F.3d 141, 157 (1st Cir. 2017) (quoting *United States v. Lewis*, 40 F.3d 1325, 1346 (1st Cir. 1994)).

"The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Ke*mper, 503 F.2d 327, 329 (6th Cir. 1974). It has been observed that "[i]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir.1993) (quoting *United States v. Thomas,* 875 F.3d 559, 562 n.2 (6th Cir. 1989)).

"The decision whether to strike language from an indictment rests within the sound discretion of the district court." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001); accord *United States v. Williams*, 158 Fed.Appx. 651, 654 (6th Cir. 2005); *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974). Such a motion should be granted only where it is clear that the allegations contained in the Indictment are not relevant to the charge made or contain inflammatory and prejudicial matter. *United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011);

5

*United States v. Brye,* 318 Fed.Appx. 878, 880 (11th Cir. 2009); *United States v. DeRosier*, 501 F.3d 888, 897 (8th Cir.2007).

### B. Allegations of private-sector honest services fraud should be stricken because § 1346 is unconstitutional as applied to this case

#### 1. Background on honest services fraud

The wire-fraud statute prohibits the use of interstate wires to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. Before 1987, courts construed the wire-fraud (and mail-fraud) statute broadly to affirm convictions involving schemes to defraud victims of various types of intangible rights. *See McNally v. United States,* 483 U.S. 350, 358 (1987). In 1987, the Supreme Court stopped that practice, holding that the wire and mail fraud statutes were "limited in scope to the protection of property rights." *McNally*, 483 U.S. at 360. The Court said that if Congress wished to have the fraud statutes cover more than property rights, then it must "speak more clearly than it has." *Id.* at 360.

Congress responded by enacting 18 U.S.C. § 1346, which clarified that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

> Whether that terse amendment qualifies as speaking "more clearly" or in any way lessens the vagueness and federalism concerns that produced this Court's decision in *McNally* is another matter. ***
>
> [T]he Courts of Appeals have spent two decades attempting to cabin the breadth of § 1346 through a variety of limiting principles. No consensus has emerged. The Fifth Circuit has held that the statute criminalizes only a deprivation of services that is unlawful under state law, *United States v. Brumley,* 116 F.3d 728, 735 (1997) (en banc), but other courts have not agreed, see *United States v. Martin,* 195 F.3d 961, 966 (C.A.7

6

>1999) (*Brumley* "is contrary to the law in this circuit ... and in the other circuits to have addressed the question"). The Seventh Circuit has construed the statute to prohibit only the abuse of position "for private gain," *United \*1310 States v. Bloom,* 149 F.3d 649, 655 (1998), but other Circuits maintain that gain is not an element of the crime at all, *e.g., United States v. Panarella,* 277 F.3d 678, 692 (C.A.3 2002). Courts have expressed frustration at the lack of any "simple formula specific enough to give clear cut answers to borderline problems." *United States v. Urciuoli,* 513 F.3d 290, 300 (C.A.1 2008).

*Sorich v. United States*, 555 U.S. 1204, 1206 (2009) (Scalia, J., dissenting from denial of petition for writ of certiorari).

The Supreme Court weighed in, partly, on the breadth of honest services fraud in *Skilling v. United States,* 561 U.S. 358 (2010). The Supreme Court stated that § 1346, as written, could raise "due process concerns underlying the vagueness doctrine." *Skilling,* 561 U.S. at 408. To steer clear of a "vagueness shoal," the Supreme Court read § 1346 as being limited only to cases "involving offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Id.* at 368, 407.

While *Skilling* narrowed the scope to only bribery and kickback schemes, many questions, such as the definition and application of the term "bribery" and the vitality of the lower courts' limiting principles, remain unanswered.

### 2. The private-sector honest services fraud statute's application here is unconstitutionally vague.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357(1983) (citations omitted). A statute is unconstitutionally vague if it either (1) "defines [the] offense in

7

such a way that ordinary people cannot understand what is prohibited," or (2) "encourages arbitrary or discriminatory enforcement." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990)). "Hypothetical vagueness is not enough; the statute must be unconstitutionally vague 'as applied to [t]his particular case.'" *United States v. Kettles,* 970 F.3d 637, 650 (6th Cir. 2020) (quoting *Krumrei*, 258 F.3d at 537).

### a. Because § 1346 requires an "official act," its application here is unconstitutionally vague.

In *Skilling*, the Court cited to existing federal bribery statutes—18 U.S.C. §§ 201(b), 666(a)(2)—and opined that § 1346 would "draw[] content not only from the pre-*McNally* case law, but also from [these] federal statutes proscribing—and defining—similar crimes." *Skilling,* 561 U.S. at 412. The Court made clear that the federal bribery statutes, through § 1346, would apply not only to federal public officials but also to "state and local corruption and to private-sector fraud[.]" *Id.* at 413 n.45.

Some courts after *Skilling* have expressly looked "to § 201(b) to give substance to the prohibition on honest-services fraud." *United States v. Nagin,* 810 F.3d 348, 351 (5th Cir. 2016). The Sixth Circuit has, similarly, looked to the elements of the general federal bribery statute, § 201(b), in honest services cases. For example, the Sixth Circuit found that honest services fraud "requires either an 'official act' in furtherance of the corrupt relationship or an agreement to perform an official act."

*United States v. Lee,* 919 F.3d 340, 350 (6th Cir. 2019), citing *McDonnell v. United States,* 579 U.S. 550 (2016).[1]

The defendant in *Lee,* a local public official, was convicted of, among other things, honest services fraud and Hobbs Act extortion. *Lee,* 919 F.3d at 339-40. On appeal, Lee argued that her convictions for those offenses should be reversed in light of *McDonnell. Id.* While the court did not expressly state that § 201(b) sets forth all of the elements of bribery for purposes of § 1346, it was implicit given that most of the court's discussion focused on the term "official act" as defined by the Supreme Court in *McDonnell. See Id.* at 350-358. Moreover, in a concurring opinion, Circuit Judge Nalbandian explained that "the question here is whether what [Lee] did was illegal under federal (not state) law and whether she must serve significant time in federal prison for what she did." *Id.* at 359 (Nalbandian, J., concurrence).[2]

This must mean that the elements from § 201(b), form part of "a uniform national standard" that the *Skilling* Court said its construction established. *Skilling,* 561 U.S. at 411. It must also mean that the requirement of an official act, as defined in *McDonnell,* applies equally to private-sector honest services cases. Otherwise, as applied here, § 1346 is unconstitutionally vague because there would be no limiting

---

[1] *See also Dimora v. United States*, 973 F.3d 496, 498, 500 n.3 (6th Cir. 2020) (reversing district court's denial of § 2255 petition as to certain honest services convictions in light of *McDonnell* and noting that "courts commonly construe [Hobbs Act extortion and honest services fraud] as requiring an 'official act' as defined in the federal bribery statute, 18 U.S.C. § 201[.]").

[2] Similarly, the Sixth Circuit has consistently held that federal law governs the existence of a fiduciary duty under the fraud statutes. *See Morda v. Klein,* 865 F.2d 782, 785 (6th Cir. 1989); *United States v. Frost,* 125 F.3d 346, 366 (6th Cir. 1997).

9

principle or fair notice as to what constitutes bribery in private-sector honest services cases. As Justice Scalia noted,

> Without some coherent limiting principle to define what "the intangible right of honest services" is, whence it derives, and how it is violated, this expansive phrase invites abuse by headline-grabbing prosecutors in pursuit of local officials, state legislators, and corporate CEOs who engage in any manner of unappealing or ethically questionable conduct.

*Sorich*, 555 U.S at 1206 (Scalia, J.).

Bribery, under § 201(b), requires a *quid pro quo*, meaning a specific intent to "give or receive something of value *in exchange for* an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original). This requirement is what distinguishes a bribe from a "gratuity," which "may constitute merely a reward" for some future or even past act. *Sun-Diamond*, 526 U.S. at 405. Moreover, an illegal gratuity is outside the scope of honest services fraud. *See Skilling*, 561 U.S. at 409-11 (holding that § 1346 only criminalizes bribes and kickbacks; rejecting other categories such as "undisclosed self-dealing" and "conflict-of-interest cases"). Indeed, the U.S. Attorney's Office for the Southern District of Ohio recognizes these fundamental requirements. *See United States v. Yu Zhou*, 2:19-cr-163-SDM, Response in Opp., R.59 at PageID 603 (explaining, in a private-sector case, that "honest services fraud requires a breach of this fiduciary duty by participation in a bribery or kickback scheme—that is, a scheme involving the actual, intended, or solicited exchange of a thing of value for *official action*.") (citing *Skilling,* at 407) (emphasis added) (OHSD).

Applying this federal definition of bribery to the Government's theories in this case illustrates how § 1346 is being "stretched out of shape." *Id.* at 412.

10

i. **The Government's theory that buying out signature gatherers (*i.e.*, paying them to quit) is private-sector honest services fraud is unconstitutionally vague and overbroad.**

The Indictment alleges that "bribe money" was paid to "buy out" signature gatherers (*i.e.*, pay them to quit). (R.22 at PageID 1282.) In other words, the *quo* in *quid pro quo* is quitting a job. The concept of private-sector honest services fraud, as applied to these allegations, is unconstitutionally vague.

To be clear, the specific allegations at issue here are **not** that the Ballot Campaign's signature collectors were paid by the alleged "Enterprise" in exchange for doing something or omitting to do something within their official duties. Rather, the Government is seeking to make it a federal criminal offense for one company to offer another company's employee a sign-on bonus or anything of value to quit one job for another. But quitting a job is not an official act under any reasonable definition, let alone as that term is defined by *McDonnell*. While paying someone to quit a job is a *quid pro quo* in the sense of "this for that" it is clearly not the type of conduct that form the basis for a federal crime. People with fiduciary duties (employees, attorneys, prosecutors, elected officials, etc.) routinely quit one job for another, usually because of better pay or benefits.[3]

---

[3] For example, Devin Nunes resigned from Congress to become the CEO of the Trump Media & Technology Group, and acknowledged in his resignation letter that he was resigning because he "was presented with a new opportunity[.]" *See Devin Nunes officially resigns from Congress*, CNN (Jan. 4, 2022) available at https://www.cnn.com/2022/01/04/politics/devin-nunes-resigns-from-congress/index.html. Clearly, Nunes was a fiduciary, and he was offered something of value (the position of CEO) to quit his fiduciary position. Was quitting Congress an official act? If so, under the Government's theory, Nunes was offered a bribe because he was offered something of value (position of CEO) *in exchange for* an official act (quitting Congress before his term expired).

Moreover, if one ignores the official act requirement in private-sector honest services case, then what is the *quo* in the *quid pro quo* here? Under the Government's theory there is no line between permissible conduct and a federal crime when a person quits one job for another.

Stretching § 1346 to apply when one pays another's employee to quit one job for another renders the statute, as applied, unconstitutionally vague.

### ii. **The Government's theory that paying money for "inside information" is private-sector honest services fraud is unconstitutionally vague.**

The Government's other theory of private-sector honest services fraud is that Borges allegedly paid bribe money to CHS-1 for "inside information," and describing that as "the number of total signatures the Ballot Campaign had collected[.]" (R.22 at PageID 1283.)[4] This is another unconstitutionally vague application of § 1346.

The Supreme Court limited application of § 1346 to situations where one breaches a fiduciary a duty through bribery or kickbacks. *Skilling,* at 407. Again, bribery, for purposes of § 1346, requires a *quid pro quo*, meaning a specific intent to "give or receive something of value *in exchange for* an official act." *Sun-Diamond*, at 404-05; *see also Lee,* at 350 (holding that a conviction under § 1346 "requires either an 'official act' in furtherance of the corrupt relationship or an agreement to perform an official act").

Generally, disclosing information about one's employer does not meet the definition of official act—it is not a "*decision or action* on any question, matter, cause,

---

[4] The Government also alleges that the "Enterprise" paid bribe money to signature gatherers for "inside information" but fails to allege any facts about the character of that information. (*Compare* R.22 at PageID 1261 *with* PageID 1282-83.)

12

suit, proceeding or controversy" before CHS-1 or an employee of the Ballot Campaign. 18 U.S.C. § 201(a)(3) (emphasis added); *McDonnell,* 136 S. Ct. at 2368; see also *United States v. Hawkins*, 777 F.3d 880, 882 (7th Cir. 2015) (explaining that, for purposes of § 1346, an agent's receipt of "a payment that does not entail a plan to change how the employee or agent does his job is neither a bribe nor a kickback.").

The Government may contend that the Ballot Campaign's agents and employees were under a duty not to disclose inside information. Even under that theory, however, the application of § 1346 in this case fails for vagueness because the Government is expanding criminal liability beyond previously recognized limits— trade secrets and confidential business information.

In *Skilling*, the Supreme Court cited with approval an example of a private-sector honest services bribery scheme. *Id.* at 401 (citing *United States v. Procter & Gamble Co.*, 47 F. Supp. 676 (D. Mass 1942)). In *Procter & Gamble*, the alleged scheme to defraud involved Procter & Gamble paying bribes to employees of Lever Brothers Company in exchange for trade secrets. *Procter & Gamble Co.,* 47 F. Supp. at 678. The district court determined that it is an implied part of the employment relationship that the employee "will not wrongfully divulge to others the confidential information, trade secrets, etc., belonging to his employer." *Id.*

Trade secret is a term of art under federal law. *See* 18 U.S.C. § 1839(3). The Government makes no allegation that the inside information is a trade secret.[5] Nor

---

[5] The Government is well-acquainted with trade secrets and knows how to plead trade secrets when applicable. *See e.g. United States v. Yu Zhou*, 2:19-cr-163-SDM, Indictment, R. 6 *in passim* (alleging, among other things, private-sector honest services fraud through bribery and improper disclosure of "trade secrets") (OHSD); *United States v. Yanjun Xu,* 1:18-cr-43-

13

does the Government allege that the inside information constitutes "confidential business information" such that it was a protected property interest.[6]

Confidential business information, as a protected property interest, has limitations. In *Carpenter v. United States,* the Supreme Court stated that "[c]onfidential business information has long been recognized as a property right." 484 U.S. 19, 26 (1987). The Court reasoned that the news matter at issue was no different than other types of confidential business information since it constituted the publisher's "'stock in trade, to be gathered at the cost of enterprise, organization, skill, labor, and money, and to be distributed and sold to those who will pay money for it, as for any other merchandise.'" *Id.* (citing *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 236 (1918)). The Supreme Court again considered intangible property rights in *Cleveland v. United States*, 531 U.S. 12 (2000). In *Cleveland*, the Court held that "[i]t does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim." *Cleveland*, 531 U.S. at 15.

In this case, the only description of inside information the Indictment offers is "the number of total signatures the Ballot Campaign had collected" (the "signature

---

TSB, Indictment, R.1 *in passim* (alleging economic espionage and theft of trade secrets) (OHSD).

[6] In a separate filing, Borges argued that, given a fair reading of CHS-1's employment contract, the information was not confidential under the terms of the contract. (R.93 at PageID 1615-17.) The Government responded that whether the information was confidential under the contract was "irrelevant." (R.96 at PageID 1660.) Moreover, the Government suggested that Borges sought to induce CHS-1 to "violate his duty to his employer" by pursuing a conflict of interest. (*Id.* at n6.) That theory ignores *Skilling*, which rejected conflict of interest cases as a basis for § 1346 prosecutions. *Skilling*, 561 U.S. at 409-10.

14

count"). (R.22 at PageID 1283-84.) Neither CHS-1's employer nor the Ballot Campaign held on to the signature count in order to trade or sell that information in a commercial sense. *Cleveland*, 531 U.S. at 23 (rejecting the comparison of Louisiana's unissued permits to unlicensed patents since Louisiana was not in the business of holding onto the licenses so that they may sell them in the commercial sense). Nor could they.

The signature count was merely a running tally of signatures gathered with respect to the repeal HB 6 referendum issue. Neither the signature count nor the actual signed petitions could be transferred or sold for use in some other referendum issue.[7] The signature count is not like "a trademark, brand name, business strategy, or other product that [the Ballot Campaign] may trade or sell in the open market." *Id*. at 24.

The Government's attempt to expand § 1346 through a novel theory using the amorphous term "inside information" must fail. It violates the concept of fair notice and exemplifies arbitrary prosecution.

*****

Section 1346, as applied here, is unconstitutionally vague. Inclusion of that surplusage in the indictment is particularly prejudicial to Borges because any argument made, theory espoused, or evidence attempted to be introduced could leave the jury with the impression that Borges was engaged in conduct that is not legal. The Supreme Court's treatment of the concept of honest services fraud demonstrates

---

[7] To be clear, there is no allegation that Borges, nor anyone else, sought to obtain the actual, signed petitions from CHS-1 or the signature gathers.

15

what a confusing concept it is. Allowing the Government to confuse the jury with theories unsupported by law would be irreparably prejudicial to Borges. Therefore, the allegations that purport to allege private-sector honest services fraud must be stricken from the indictment and the Government must be forbidden from attempting to introduce any evidence supporting that theory.

### C. Allegations of Travel Act violations, predicated on O.R.C. § 3517.22(A)(2), should be stricken from the Indictment.

Ohio's Infiltration Statute, O.R.C. § 3517.22(A)(2), governs an inherently intrastate activity—conduct concerning Ohio proposition/issue campaigns. The Infiltration Statute is quasi-criminal in nature because it is not subject to general police and prosecutorial enforcement, and a violation (after the administrative requirements are met, if ever) is a misdemeanor. Predicating a Travel Act violation on this relatively minor, quasi-criminal statute that governs an inherently intrastate activity, violates constitutional principles of federalism. Moreover, it also violates due process principles because the Infiltration Statute is broader than the generic definition of bribery. The Government's attempt to apply the Travel Act to conduct that is broader than the generic definition of bribery is unconstitutional.

#### 1. O.R.C. § 3517.22(A)(2) does not qualify as an offense of bribery for purposes of the Travel Act

The Travel Act prohibits use of interstate facilities to promote or carry on certain unlawful activities. *See* 18 U.S.C. 1952(a). The Act provides:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>
> (1) distribute the proceeds of any unlawful activity; or

> (2) commit any crime of violence to further any unlawful activity; or
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform—
>
> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both[.]

*Id.* Relevant to this case, the statutory definition of "unlawful activity" includes "bribery … in violation of the laws of the State in which committed[.]" *Id.* at 1952(b)(2). Bribery, in this context, is defined to be "the generic definition of bribery," described as "includ[ing] payments to private individuals to influence their actions." *Perrin v. United States,* 444 U.S. 37, 45-46 and 49 (1979).

The Indictment alleges violations of the Travel Act predicated on O.R.C. § 3517.22(A)(2) (the "Infiltration Statute"). (R.22 at PageID 1257.) The Infiltration Statute provides:

> (A) No person during the course of any campaign in advocacy of or in opposition to the adoption of any proposition or issue submitted to the voters shall knowingly and with intent to affect the outcome of such campaign do any of the following:
>
> (2) Promise, offer, or give any valuable thing or valuable benefit to any person who is employed by or is an agent of a committee in advocacy of or in opposition to the adoption of any ballot proposition or issue, for the purpose of influencing the employee or agent with respect to the improper discharge of the employee's or agent's campaign duties or to obtain information about the committee's campaign organization.

O.R.C. § 3517.22.

By its terms, the Infiltration Statute prohibits more than an intent to improperly influence or discharge actions, the heartland of generic bribery. *See*

17

*Perrin,* 444 U.S. at 45 & n.9 and 10 (surveying state statutes, all requiring an intent to influence actions). It also prohibits an intent "to obtain information about the committee's campaign organization." O.R.C. § 3517.22(A)(2).[8] Inclusion of that alternative conduct makes the Infiltration Statute broader than the generic definition of bribery.[9] For that reason alone, the Infiltration Statute is not a bribery offense for purposes of the Travel Act.

The Government's attempt to predicate the Travel Act on this overbroad statute violates due process. For these reasons, the Court should strike the offending allegations (*see* Section II, *supra*) from the Indictment as prejudicial surplusage.

**2. Continued prosecution violates constitutional federalism concerns**

Predicating the Travel Act on the Infiltration Statute violates constitutional federalism concerns. By its terms, the Infiltration Statute governs an inherently intrastate activity—Ohio proposition/issue referendum campaigns. The Ohio General Assembly determined that a violation of the Infiltration Statute is an administrative matter that must first be presented to the Ohio Elections Commission and subjected to its administrative provisions. *See* O.R.C. § 3517.22(C). If those administrative provisions (O.R.C. §§ 3517.154 to 3517.157) have been satisfied, then the matter may be referred to a local prosecutor for consideration. O.R.C. 3517.155(A)(1). Only then

---

[8] Ohio's Bribery statute, O.R.C. § 2921.02, does not include this alternative language. Thus, the Infiltration Statute is broader than the generic definition of bribery, Ohio's general bribery statute, and the general federal bribery statute, *supra*.

[9] This is true applying either a categorical approach, *see e.g. Taylor v. United States,* 495 U.S. 575, 598-99 (1990), or a conduct-based approach, *see e.g. United States v. Rogers,* 389 F.Supp.3d 774 (CDCA 2019) (rejecting the categorical approach and finding that Perrin requires a conduct based analysis for purposes of the Travel Act). *See also Shular v. United States,* 140 S. Ct. 779 (2020) (discussing the two approaches and their applicability).

18

may a misdemeanor charge be brought for the alleged violation of the Infiltration Statute. *See* O.R.C. §§ 3517.22(C) and 3517.992(V).

The Supreme Court, mindful that concurrent state and federal jurisdiction raises federalism concerns, has mandated that the Travel Act be construed narrowly: "Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations [that] would transform relatively minor state offenses into federal felonies." *Rewis v. United States,* 401 U.S 808, 812 (1971).

The Government is using the Travel Act to transform a minor, quasi-criminal state offense into a federal felony which is then alleged as a predicate for an even more serious federal felony—RICO conspiracy. The Government's attempt to expand bribery, for purposes of the Travel Act, violates basic due process guarantees and upsets the delicate balance between state and federal police powers.

*****

The alleged violations of the Infiltration Statute are, therefore, an improper predicate under the Travel Act. The Court should strike the offending paragraphs as prejudicial surplusage.

### IV. CONCLUSION

Based on the foregoing, the Court should grant this motion and strike from the Indictment allegations concerning private-sector honest services fraud and the Travel Act.

19

Respectfully submitted,

*/s/ Karl H. Schneider*
Karl H. Schneider (0012881), Lead Counsel
Todd A. Long (0082296)
MCNEES WALLACE & NURICK LLC
21 East State Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 719-2843
Facsimile: (614) 469-4653
kschneider@mcneeslaw.com
tlong@mcneeslaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion was electronically filed with the Clerk of the United States District Court using the CM/ECF system on February 1, 2022, which will send notification of such filing to all attorneys of record including Assistant United States Attorneys Emily Glatfelter and Matthew Singer.

*/s/ Karl H. Schneider*
Karl H. Schneider (0012881), Lead Counsel