UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-77 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| MATTHEW BORGES (4), | : | |
| | : | |
| Defendant. | : | |

ORDER DENYING DEFENDANT BORGES'
MOTION TO STRIKE SURPLUSAGE

This criminal case is before the Court on Defendant Matthew Borges' motion to strike surplusage from the Indictment (Doc. 104) and the parties' responsive memoranda (Docs. 113, 115).[1]

## I. BACKGROUND

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendants Matthew Borges, as well as Larry Householder, Jeffrey Longstreth, Neil Clark, Juan Cespedes, and Generation Now (collectively, the "Co-Defendants"), with participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(c), (d). (Doc. 22 at 10, 40).[2]

---

[1] During the Final Pretrial Conference on January 11, 2023, the Court orally denied Defendant Borges's motion and indicated that it would issue a written decision to memorialize the basis for its ruling. Accordingly, the Court issues the instant Order.

[2] Defendants Longstreth, Cespedes, and Generation Now pleaded guilty and are awaiting sentencing. (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). Defendant Neil Clark died and, accordingly, the case against him was dismissed. (Doc. 88).

Specifically, the Indictment alleged that the Co-Defendants constituted an enterprise (the "Householder Enterprise"), as defined under 18 U.S.C. § 1961(4). (Doc. 22 at 1). The Indictment details the role of the Co-Defendants and other associates in the Householder Enterprise, and states that the purpose of the Householder Enterprise was to grow Defendant Householder's political power, to enrich the Householder Enterprise and its members and associates, and to conceal these activities from public exposure and potential prosecution. (*Id*. at 10).

Additionally, as an element of the RICO conspiracy, the Indictment alleged that the Co-Defendants engaged in a "pattern of racketeering activity," which included committing, or intending another to commit, two or more RICO predicate offenses. (*Id*. at 10-11); 18 U.S.C. §§ 1961(1), (5) & 1962(c), (d). The predicate offenses, as identified in the Indictment, included: public official honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346; private sector honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346; extortion under color of official right, in violation of 18 U.S.C. § 1951; interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952 (the "Travel Act"); money laundering, in violation of 18 U.S.C. § 1956; engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957; and bribery, in violation of Ohio Rev. Code § 2921.02. (Doc. 22 at 10-11).

In the instant motion, Defendant Borges moves to strike the private sector honest services wire fraud and the Travel Act predicate offenses from the Indictment, arguing

that because the offenses "do not allege any cognizable racketeering activity, they are irrelevant and prejudicial …." (Doc. 104 at 3).

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 7(c)(1), "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."

"Unnecessary allegations [in the indictment] are 'surplusages' and can be ignored." *Gambill v. United States*, 276 F.2d 180, 181 (6th Cir. 1960). Pursuant to Fed. R. Crim. P. 7(d), the Court may also choose to strike surplusage from an indictment, upon the defendant's motion. "The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). However, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (citation omitted). Thus, "the standard under Rule 7(d) has been strictly construed against striking surplusage," and "[t]he granting of such a motion is proper … only where the words stricken are not essential to the charge." *Kemper*, 503 F.2d at 329.

Ultimately, the decision whether to strike surplusage lies within the Court's discretion. *Id*.

3

## III.  ANALYSIS

Defendant Borges asserts that the allegations concerning private sector honest services wire fraud and the Travel Act constitute surplusage in the Indictment, and must therefore be stricken, pursuant to Rule 7(d).  (Doc. 104).

Specifically, Defendant argues that "the private-sector honest services fraud (18 U.S.C. §§ 1343, 1346) … statute is, as applied, void for vagueness."  (Doc. 104 at 1, 6-16).  Additionally, Defendant argues that Ohio Rev. Code § 3517.22(a)(2) "is a minor state offense that is not an offense of bribery for purposes of the Travel Act and the prosecution violates principles of due process and federalism."  (Doc. 104 at 1, 16-19).

### A.  Private Honest Services Fraud Predicate is Not Unconstitutionally Vague

"A statute is unconstitutionally vague only if it either (1) 'defines [an] offense in such a way that ordinary people cannot understand what is prohibited,' or (2) 'encourages arbitrary or discriminatory enforcement.'"  *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)).  "[D]efendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation."  *Krumrei*, 258 F.3d at 537 (citing *United States v. Avant,* 907 F.2d 623, 625 (6th Cir. 1990)).

Here, Defendant argues that the private sector honest services wire fraud statute, as applied to the Government's theory of the case, is unconstitutionally vague.  (Doc. 104 at 6-16).  Specifically, Defendant asserts that the Indictment fails to allege that the bribery scheme involved a particular official act and that, instead, "the Government is

4

seeking to make it a federal criminal offense for one company to offer another company's employee a sign-on bonus or anything of value to quit one job for another." (*Id*. at 8-12). Alternatively, Defendant argues that the information sought regarding the House Bill 6 referendum efforts (the "Ballot Campaign") does not constitute deprivation of the type of property that private sector honest services wire fraud proscribes. (*Id*. at 12-15).

The Government opposes the motion, arguing that the allegations capture the precise type of offending conduct—bribery in exchange for breaching a fiduciary duty—that the United States Supreme Court discussed in *Skilling v. United States*, 561 U.S. 358 (2010). (Doc. 113 at 4-17). The Government further argues that an assessment of whether the statute is void "as applied" is premature at the pretrial motion stage. (*Id*. at 10-11). Finally, the Government argues that a predicate offense cannot be stricken as surplusage because it is an allegation of conduct the Government intends to prove at trial. (*Id*. at 15-16).

As an initial matter, the Court notes that private sector honest services fraud (and the Travel Act, as discussed *infra*) meets the general statutory definition of "racketeering activity" and is included in the Indictment as a predicate offense of the RICO conspiracy. *See* 18 U.S.C. § 1961(1). And given that Defendant is charged in the case with the RICO conspiracy, the predicate offense constitutes "language in the indictment … which the government hopes to properly prove at trial." *See Moss*, 9 F.3d at 550. Accordingly, the Court finds that "[the language] cannot be considered surplusage …." *Id.*

Additionally, the Court agrees that an "as applied" analysis for vagueness is premature at this time. Indeed, Defendant is not arguing (nor could he argue, in light of

5

*Skilling*) that the private sector honest services fraud statute is vague in all applications. Rather, he is arguing that the statute is vague as applied to the Government's intended presentation of evidence at trial.[3]  Notably, however, Defendant relies on his own interpretation of the Government's theory to make this argument.  But such an interpretation cannot control the Court's analysis, nor can the Government be expected to summarize the entirety of its case in the Indictment or at the pretrial stage.  So long as the Indictment meets the (fairly low) pleading standard, any deficiencies must be tested at trial.

Moreover, and contrary to Defendant's assertions, the Court finds that the Indictment contains allegations that can indeed support a conviction within the appropriate scope of the statute.  As set forth in the Indictment, the allegations of private sector honest services wire fraud include the Householder Enterprise's efforts to employ bribery as a means of defeating the Ballot Campaign.  (Doc. 22 at 15, 35-38).  Specifically, the Indictment alleges that the Householder Enterprise "bribed and attempted to bribe employees and agents of the Ballot Campaign to improperly discharge their campaign duties and to obtain information about the Ballot Campaign's organization in order to defeat the Ballot Campaign." (*Id.* at 15).  The Indictment then details that the Householder Enterprise used laundered funds to bribe the Ballot

---

[3] In truth, what Defendant actually appears to argue is that the Government's allegations fall outside the scope of conduct that the statute proscribes, and Defendant leverages this argument to say that the error arises due to vagueness of the statute.  But his argument, at its core, could more fairly be interpreted as one seeking dismissal for insufficiency of the Indictment.  In that respect, the Court finds no merit in the argument and would rely on the same propositions of law set forth in the Court's prior Order denying Defendant Householder's motion to dismiss.  (Doc. 172).

6

Campaign's signature collectors, and that Defendant Borges further used the laundered funds to bribe an employee of the Ballot Campaign in exchange for inside information that would assist the Householder Enterprise's goal of defeating the referendum effort. (*Id.* at 35-38).

As the *Skilling* court explained, whatever conflating applications of honest services wire fraud may have come before, such cases "do not cloud the [honest-services] doctrine's solid core: The 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." 561 U.S. at 407 (emphasis added).[4] And when "[i]nterpreted to encompass only bribery and kickback schemes, **§ 1346 is not unconstitutionally vague**." *Id.* at 412 (emphasis added).

In short, there is a permissible scope for private sector honest services fraud offenses, and the allegations as set forth in the Indictment do not necessitate a finding that the Government intends to run afoul of that scope. Thus, at the pleading stage, Defendant's argument fails.[5]

---

[4] The Court further rejects Defendant's reliance on an "official act," as such a requirement is applicable to public official honest services fraud. As Defendant's motion focuses on private sector honest services fraud, the breach of a fiduciary duty, as alleged in the Indictment, is sufficient.

[5] Given the timing of Defendant's motion, *i.e.*, pretrial, the Court need not further address, in this Order, the peripheral arguments as to the legal sufficiency of the Government's theory of the case. *See Hamling v. United States*, 418 U.S. 87, 118 (1974) (noting that, in assessing an as-applied vagueness challenge to determine sufficiency of an indictment, the pleading standard is only heightened "[w]here guilt depends so crucially upon such a specific identification of fact") (emphasis added). And, in any event, the Court's position on such an argument can be gleaned from its post-trial Order denying Defendant Borges' motion to file post-trial motions out of time. (Doc. 265).

### B. The Travel Act Encompasses Ohio's Bribery Statute

Next, Defendant argues that Ohio Rev. Code § 3517.22(a)(2) is too broad to fit within the scope of Travel Act's definition of "unlawful activity." (Doc. 104 at 16-18). Defendant further argues that predicating a Travel Act violation on Ohio's misdemeanor, intrastate bribery statute implicates federalism concerns. (*Id*. at 18-19).

The Government opposes, arguing that the Supreme Court's decision in *Perrin v. United States*, 444 U.S. 37 (1979), directly contradicts each aspect of Defendant's argument, as does a plain reading of the statute. The Court agrees.

To start, the Court would again note that (as with private sector honest services fraud, discussed *supra*), the Travel Act meets the general statutory definition of "racketeering activity" and is included in the Indictment as a predicate offense of the RICO conspiracy. *See* 18 U.S.C. § 1961(1). And given that Defendant is charged in the case with the RICO conspiracy, the predicate offense constitutes "language in the indictment … which the government hopes to properly prove at trial." *See Moss*, 9 F.3d at 550. Accordingly, the Court finds that, as a purely procedural matter, "[the language] cannot be considered surplusage …." *Id.* But, in any event, Defendant's argument fails on the merits.

Specifically, the Travel Act proscribes the use of "any facility in interstate or foreign commerce, with intent to … promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]" 18 U.S.C. § 1952(a)(3). In turn, the definition of "unlawful activity" includes an act of "bribery, … in violation of the laws of the State in which committed or of the United

8

States ….." 18 U.S.C. § 1952(b). This definition includes both the common-law understanding of bribery (*i.e.*, generally involving public officials), as well as "payments to private individuals to influence their actions." *Perrin*, 444 U.S. at 43-45.

The Indictment identifies bribery, in violation of Ohio Rev. Code § 3517.22(A)(2), as the "unlawful activity" for purposes of the Travel Act. (Doc. 22 at 11). Ohio's cited bribery statue states as follows:

> (A) No person during the course of any campaign in advocacy of or in opposition to the adoption of any proposition or issue submitted to the voters shall knowingly and with intent to affect the outcome of such campaign do any of the following:
> …
> (2) Promise, offer, or give any valuable thing or valuable benefit to any person who is employed by or is an agent of a committee in advocacy of or in opposition to the adoption of any ballot proposition or issue, for the purpose of influencing the employee or agent with respect to the improper discharge of the employee's or agent's campaign duties or to obtain information about the committee's campaign organization.

Ohio Rev. Code § 3517.22(A)(2).

Defendant argues that Ohio's statute is broader than the Travel Act's bribery definition because the Travel Act's definition is limited to bribes to "private individuals to influence their actions," whereas Ohio's statute also includes an intent "to obtain information about the committee's campaign organization." (Doc. 104 at 18). This argument fails, however, because Defendant ignores the first half of the proscription.

Specifically, the entire subparagraph reads that it is a violation of the law to "promise, offer, or give" something of value "**for the purpose of influencing the employee or agent** *with respect to* the improper discharge of the employee's or agent's

9

campaign duties *or to* obtain information about the committee's campaign organization." Ohio Rev. Code § 3517.22(A)(2). As written, the "for the purpose of influencing language" qualifies both forms of conduct. In other words, the language can be read as: "for the purpose of influencing the employee or agent … to obtain information about the committee's campaign organization."[6] Thus, Ohio Rev. Code § 3517.22(A)(2) falls squarely within the Travel Act's definition of "bribery."

Defendant's alternative argument also fails. Specifically, Defendant argues that Ohio's bribery statute is a misdemeanor offense that "governs an inherently intrastate activity—Ohio proposition/issue referendum campaigns," and therefore its use for purposes of the Travel Act implicates federalism concerns. (Doc. 104 at 18-19).

However, the Travel Act itself includes an "interstate commerce" element. And because a conviction under the Travel Act requires the use of a facility in interstate commerce, there is no conceivable way that Defendant could be convicted in federal court of a strictly intrastate offense.

Moreover, the Supreme Court addressed the interstate nexus question, holding as follows:

> [S]o long as the requisite interstate nexus is present, the [Travel Act] statute reflects a clear and deliberate intent on the part of Congress to alter the federal-state balance in order to reinforce state law enforcement. In defining an "unlawful activity," Congress has clearly stated its intention to include violations of state as well as federal bribery law.

---

[6] Frankly, it defies logic to assume that the *quid pro quo* of offering valuable consideration in exchange for information is not a manner of influencing a person's actions.

10

*Perrin*, 444 U.S. at 50.  In other words, the issue that Defendant argues invalidates the Travel Act's application here is actually precisely what Congress intended the Travel Act to accomplish.

Finally, Defendant's further argument that Ohio's bribery statute is merely a misdemeanor offense is equally without merit.  The Travel Act defines "unlawful activity" to include "bribery, … in violation of the laws of the State in which committed or of the United States …."  18 U.S.C. § 1952(b).  The Travel Act imposes no limitation on the category or degree of the state law violation that is required to meet the definition of "unlawful activity."[7]  Based on the plain language of the statute, the Court declines to impose a limitation where none exists.

## IV.  CONCLUSION

Based upon the foregoing, Defendant's motion to strike surplusage (Doc. 104) is **DENIED**.

**IT IS SO ORDERED.**

Date:  6/27/2023

Timothy S. Black
United States District Judge

---

[7] Indeed, the Travel Act conviction that the Supreme Court upheld in *Perrin* also involved a misdemeanor state law bribery offense.  *See United States v. Perrin*, 580 F.2d 730, 739 (5th Cir. 1978).

11